**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued September 15, 2016
Decided November 23, 2016

**Before**

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*


No. 16-1113

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Northern District of |
| | Illinois, Eastern Division. |
| *v.* | |
| | No. 13-CR-843-2 |
| COLBI ANDRY, | |
| *Defendant-Appellant*. | Harry D. Leinenweber, |
| | *Judge*. |

**O R D E R**

Colbi Andry was charged in a superseding indictment with six counts of wire fraud, in violation of 18 U.S.C. § 1343, based on his participation in a scheme to defraud homeowners seeking mortgage loan modifications. Following trial, a jury convicted Andry on all counts. The district court determined that Andry's guideline offense level was 26 based on its finding that the loss totaled $122,000 and its imposition of a three-level enhancement for Andry's role in the offense. Given Andry's criminal history category, this resulted in an advisory guideline sentencing range of 63 to 78 months'

imprisonment. The district court sentenced Andry to 48 months' imprisonment. Andry appeals, arguing the evidence presented at trial constituted an impermissible variance from the indictment and that the district court erred in determining the amount of loss involved and in enhancing his offense level by three for his role in the offense. We affirm.

I.

In 2007 and 2008, Everett Pope, Andrew Ramsey, and Colbi Andry worked together at two different mortgage companies in the Chicago area, Liberty Solutions and J.P. Green. In late 2008 or early 2009, the three decided to start their own company, EAC Financial (EAC). Andry was to work in marketing and sales, while Pope was to oversee the loan processing and financial end. (Ramsey left EAC early on and he is not involved in this case.) EAC leased an office located at 9942 S. Western Avenue in Chicago, and purchased computers, telephones and office equipment.

EAC operated solely as a loan modification company, charging fees in exchange for assisting customers with loan modifications. While EAC offered some legitimate services, Pope (who pleaded guilty and testified at Andry's trial) explained that if the customers did not qualify for legitimate modification agreements, EAC would string along the homeowners while accepting up-front fees for a modification agreement that would never materialize. EAC employees would also falsely tell customers that EAC had over a 90% success rate in obtaining loan modifications. They also recommended that customers stop paying their mortgages. Pope testified that in order to further convince clients to pay up-front fees and sign on with them, EAC falsely told customers that an attorney was involved in negotiating the loan modification agreement. Under Illinois law it was illegal to charge customers up-front fees for loan modification services, but licensed attorneys were excluded from this prohibition. Illinois Mortgage Rescue Fraud Act, 765 ILCS 940 *et. seq.*

In late 2009, when the lease expired for the building out of which EAC operated, and to escape from the rising number of customer complaints, Pope relocated to Matteson, Illinois. Andry continued to operate out of Chicago. However, according to Pope, Andry continued to handle the sales end while Pope handled the loan processing end. Andry's brother Christopher also joined him in this enterprise: Christopher's role was to deliver the loan modification application paperwork to the victims.

The City of Chicago soon detected EAC's fraud. In response to customer complaints, the City filed an administrative complaint against EAC, Pope, and Andry in 2010. In January 2011, to settle the complaint, Andry and Pope agreed to the entry of an order by the City of Chicago Department of Administrative Hearings which enjoined them from offering loan modification services in Chicago and required them to pay $50,000 in fines and $13,125 in restitution. But rather than comply, they began using aliases. Pope used the name "Jonathan Pincuss," and Andry used the names "Richard Lockwell" and "Rich Ingram." Andry, as Lockwell or Ingram, operated under the names "Integrity Mortgage and Insurance," "Family First Home Solutions," and "Certified Forensic Auditors." Pope, as Pincuss, held himself out as an attorney and operated under the name "Diamond Financial LLC," or "D Financial."

The federal government eventually indicted Andry, his brother Christopher, and Pope. Andry and Christopher were charged in a superseding indictment with six counts of wire fraud related to specific loan modification agreements. Pope pleaded guilty and testified at the Andry brothers' trial, as highlighted above. At trial, Andry presented a very different story: Andry claimed that he believed the loan modification business was legitimate and that an attorney truly was working on behalf of EAC.

While the government maintained that Andry was involved in the entire scheme to defraud since its inception in 2008, it also argued, based on our decision in *United States v. White*, 737 F.3d 1121, 1138 (7th Cir. 2013), that Andry could be convicted if it proved he was part of a smaller scheme to defraud. The district court instructed the jury that:

> If you find that there was more than one scheme [to defraud] and the defendants whom you are considering—and the defendant whom you are considering was a member of one or more of the schemes, then you may find that defendant guilty only if the scheme of which he was a member of [sic] was part of the charged scheme. The government is not required to prove the exact scheme charged in the indictment so long as it proves that the defendant was a member of a smaller scheme contained within the charged scheme.

The jury convicted Andry and his brother. (Because this appeal does not involve the charges against Christopher, we limit our discussion of his involvement to the extent necessary to resolve Andry's appeal.) At Andry's sentencing, the court first

determined that he was responsible for the total loss suffered by victims during the entirety of the scheme from 2008 to 2013, which totaled $122,000. The district court also enhanced Andry's sentencing level by three for his role in the offense. With Andry's Category I Criminal History, his advisory guideline sentencing range was 63 to 78 months' imprisonment. The district court sentenced Andry to 48 months in prison. Andry appeals, arguing the evidence presented at trial constituted an impermissible variance from the indictment and that the district court erred in calculating the loss involved and in enhancing his sentence for his role in the offense.

II.

A.      Variance

On appeal, Andry first argues that there was a material variance between the charges in the superseding indictment and the proof at trial. Specifically, he claims that the indictment charged one scheme running from 2008 to 2012, but that the evidence at trial established multiple smaller schemes and that he was only involved in the scheme running from February 2010 to 2012. Andry acknowledged during oral argument that his variance argument is foreclosed by this court's decision in *White,* wherein we held "it is permissible for the government to proceed on a subset of the allegations in the indictment, proving a conspiracy smaller than the one alleged, so long as that subset is also illegal." 737 F.3d at 1138. Accordingly, we reject Andry's variance argument and affirm his conviction.

B.      Loss Calculation

Alternatively, Andry contends that while *White* may have justified his conviction based on his participation in a smaller scheme, it was error to hold him responsible at sentencing for the $122,000 loss stemming from the entire scheme to defraud because he was only involved in the scheme at the tail end. Specifically, Andry argues that the loss "directly attributed to the fraud scheme to which defendant participated in beginning in or about February 2010," totaled only approximately $36,000. The district court rejected Andry's argument, finding "that this was an illegal action from the very beginning and that the defendant was aware of it and participated in it and agreed to assist it, . . . "

At sentencing, the government must establish the loss by a preponderance of the evidence. *United States v. Orillo*, 733 F.3d 241, 244 (7th Cir. 2013). "That standard requires only that the fact-finder believe that the existence of a fact is more probable

than its non-existence, and for the purposes of determining the loss amount, a reasonable estimate is sufficient." *Id.* Further, "[w]e review the district court's finding of loss amount for clear error, and will reverse only if, based on the entire record, we are left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotation omitted).

The district court did not commit clear error in holding Andry responsible for the entire loss suffered by victims of the scheme from 2008 until 2013. The district court heard the entirety of the evidence presented at trial, including Pope's testimony that when he and Andry started EAC in 2008, they agreed that if a customer did not qualify for a refinancing, they would continue to string him along. Pope also testified that they told customers that EAC had an attorney reviewing the paperwork, but that was not true. Additionally, Pope told the jury that when he moved offices, he continued to work with Andry, with Andry providing the customers and Pope providing the closing services. While Andry challenged much of this testimony, the evidence was more than sufficient to satisfy the preponderance of the evidence standard governing sentencing. Accordingly, the district court did not commit clear error in holding Andry responsible for the $122,000 loss.

### C.      Role in the Offense

Lastly, Andry challenges the district court's assessment of a three-level enhancement at sentencing under U.S.S.G. § 3B1.1(b). That section provides that a three-level enhancement is appropriate where the defendant "was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." This court reviews a role-in-the-offense enhancement for clear error.

The district court did not commit clear error in enhancing Andry's offense level by three. Andry admitted supervising his brother Christopher, providing him with the names and locations of the victims, and directing him to have the victims sign the paperwork. The evidence also established that there were more than five participants in the entire scheme. While Andry attempts to argue that he was only involved in a smaller scheme with Pope, which did not include the requisite five or more participants, as explained above, the district court could reasonably find that Andry and Pope were part of the scheme to defraud from its inception until 2012. The evidence easily showed that more than five members were involved in that scheme. Accordingly, the three-level enhancement under § 3 B1.1(b) was proper.

### III.

The government charged Andry with mail fraud and established at trial that he participated in a scheme to defraud homeowners seeking mortgage loan modifications. Under this court's holding in *White*, the jury could convict Andry even if he had participated in a scheme smaller than that alleged in the indictment. However, the government presented sufficient evidence to support, at sentencing, the district court's finding that Andry had participated in the entirety of the fraudulent scheme and was thus responsible for the entire $122,000 loss. Similarly, the district court's finding that the scheme involved five or more individuals and that Andry supervised at least one individual was not clearly erroneous. For these and the foregoing reasons, we AFFIRM.